UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SUSTAINABLE LOW MAINTENANCE GRASS, LLC, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 14-cv-11894-IT |
| CUTTING EDGE SOLUTIONS, LLC, | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 15, 2014

TALWANI, D.J.

I.   Introduction

This action for declaratory relief filed by Plaintiff Sustainable Low Maintenance Grass, LLC ("Sustainable") against Defendant Cutting Edge Solutions, LLC ("Cutting Edge") arises out of Cutting Edge's claim that Sustainable is infringing its trademark. Before the court is Cutting Edge's Motion to Dismiss Complaint, or, in the Alternative, to Transfer Venue [#11], in which it asks the court to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to dismiss this action.[1] For the reasons set forth below, this motion is ALLOWED.

---

[1] In its motion, Cutting Edge also argues that the court should dismiss, or alternatively transfer this action to the Northern District of California, because (1) Sustainable lacked capacity to sue at the time this action was filed, and (2) change of venue is warranted under 28 U.S.C. § 1404(a). Because the court finds it proper to exercise its discretion to dismiss this case under the Declaratory Judgment Act, it need not reach these arguments.

II. <u>Facts</u>[2]

On March 17, 2014, Cutting Edge, by and through its attorney, Michelle D. Kahn, sent a cease-and-desist letter to Sustainable, asserting that Sustainable's use of the designation "Cutting Edge" in connection with Sustainable's fertilizers, herbicides, and related plant and garden care products (the "SLMG Mark") infringed on Cutting Edge's trademark CUTTING EDGE SOLUTIONS used in connection with fertilizers for agricultural use and related products (the "CES Mark"). Decl. Kenneth R. Berman Opp'n Defs.' Mot. Dismiss Compl., Altern. Transfer Venue Ex. A [hereinafter Berman Decl.]. In its letter, Cutting Edge also claimed that Sustainable's use of the CES Mark created a false designation of origin in violation of federal and state unfair competition laws. <u>Id.</u> Cutting Edge's letter stated further that Cutting Edge was "prepared to seek legal remedies to the full extent permitted by law, [but that] it would prefer to resolve this matter amicably," and that "[f]urther action may be averted if" Sustainable, within ten days, agreed in writing to stop using the CES Mark and abandon Sustainable's application to use the designation, which was currently pending before the United States Patent and Trademark Office. <u>Id.</u>

Ten days later, on March 27, 2014, Kenneth Berman, an attorney for Sustainable, emailed Ms. Kahn, asking for an extension of time to respond until "sometime during the week of April 6." <u>Id.</u> Ex. B. In his e-mail, Mr. Berman stated that, like Ms. Kahn, he hoped that the parties could resolve this matter amicably. <u>Id.</u> Ms. Kahn granted this request. <u>Id.</u>

---

[2] The following facts are derived from the complaint and the parties' affidavits and declarations submitted in connection with this motion. See <u>Biogen, Inc. v. Schering AG</u>, 954 F.Supp. 391, 395 (D. Mass. 1996) (determining whether to exercise its discretion under the Declaratory Judgment Act to allow the case to proceed by looking beyond the pleadings to the affidavits). Because the issues analyzed here arise in the context of a motion to dismiss, the court construes these facts in the light most favorable to the non-movant, see <u>Pettengill v. Curtis</u>, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 96 (1st Cir. 2007)).

On April 11, 2014, Mr. Berman emailed Ms. Kahn, informing her that the evidence that Sustainable had reviewed had not persuaded it that Cutting Edge's claims were valid. Id. Ex. D. Mr. Berman noted that Cutting Edge had filed an application to register the CES Mark in August 2012, more than one year after Sustainable had filed an application to register its SLMG Mark in July 2011, and that Cutting Edge's application was filed on the basis of intent-to-use. Id.; see id. Ex. C. Mr. Berman noted that Cutting Edge's filing of an Amendment to Allege Use cited a first date of use of January 2001 and asserted that Sustainable's investigation did not yield any evidence to support this fact. Id. Ex. D. Mr. Berman wrote finally that "[w]e believe this matter should and can be resolved to the parties' mutual satisfaction without litigation" and that "[w]e hope you and Cutting Edge agree." Id.

On April 15, 2014, Ms. Kahn replied to Mr. Berman's e-mail, asking Mr. Berman what evidence he would find sufficiently compelling and asserting that "the Amendment to Allege Use under penalty of perjury filed with the USPTO is evidence." Id. Ms. Kahn further stated that she would not support her client in perpetrating fraud on the USPTO, and that, "as we are not yet in litigation, we do not wish to engage in informal discovery so please let us know what sort of proof you would be moved by." Id.

On April 17, 2014, Ms. Kahn emailed Mr. Berman, asking if she could expect a reply to her April 15, 2014 e-mail or if Cutting Edge should simply send Mr. Berman evidence of its use of the CES Mark. Id. Ex. E. Mr. Berman responded to Ms. Kahn's e-mail that day, inviting her to send Sustainable evidence that would verify Cutting Edge's use of the CES Mark and establish the time period and geographic location for which the CES Mark was used. Id. The next day, on April 18, 2014, Sustainable filed this action for a declaratory judgment, but, as described below, did not immediately serve it upon Cutting Edge. Id. ¶ 13-14.

3

On April 21, 2014, Ms. Kahn responded to Mr. Berman's April 17, 2014 e-mail, attaching evidence that Cutting Edge contended reflected its use of the CES Mark commencing in 2001 and continuing to the present. Id. Ex. F. Mr. Berman responded to this e-mail on April 23, 2014, asserting that the evidence provided by Cutting Edge was not evidence of trademark use and asking if it made more sense for the parties to be discussing co-existence. Id. On that same day, Ms. Kahn responded by stating that Cutting Edge does not need to engage in pre-litigation discovery and that the packaging label provided to Sustainable evidenced Cutting Edge's use of the CES Mark. Id. Ex. G. Ms. Kahn further stated that if Sustainable "wishes to remain in denial" of Cutting Edge's seniority in the CES Mark, it will have to resolve the conflict "in a court of competent jurisdiction should that become necessary." Id.

Thereafter, the parties unsuccessfully continued their attempts to resolve the issue without litigation. On June 16, 2014, Cutting Edge filed suit against Sustainable and its business partner, Turf and Landscape Solutions, LLC, in the Northern District of California, seeking injunctive and monetary relief for unfair competition, common law trademark infringement, cancellation of Sustainable's federal trademark registration, and cybersquatting. Aff. Michelle D. Kahn Supp. Mot. Dismiss, Altern. Transfer Venue ¶ 24 [hereinafter Kahn Aff.]. Two days later, on June 18, 2014, Sustainable served Cutting Edge with the complaint filed in this court.[3]

III. Discussion

A. *Declaratory Judgment Act*

(1) Law

The Declaratory Judgment Act provides, in relevant part:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

---

[3] Any additional facts relevant to the court's analysis will be included below.

> legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Under the Act, "a court 'may' provide declaratory relief, but the decision to award such relief rests within the court's discretion." EMC Corp. v. Roland, 916 F. Supp. 51, 53 (D. Mass. 1996) (citing El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992)). A district court's discretion in declining to enter relief is broad. See Wilton v. Seven Falls Co., 515 U.S. 277 (1995) ("The statute's textual commitment to discretion, and the breadth of leeway we have always understood it to suggest, distinguish the declaratory judgment context from other areas of the law in which concepts of discretion surface.").

In deciding whether to dismiss an action because a similar one is pending in a different court, "the first-filed suit is ordinarily given priority, but in particular cases there may be good reasons for making an exception to this general rule." Roland, 916 F. Supp. at 53. "[T]he first-to-file rule is not to be applied in a mechanical way," EMC Corp. v. Parallel Iron, LLC, 914 F. Supp. 2d 125, 127 (D. Mass. 2012), and exceptions "are not rare, and are made when justice or expediency requires," Biogen, 954 F. Supp. at 398. One widely recognized exception to the first-filed rule is where "there are 'special circumstances' justifying a transfer, such as where a party engages in misleading conduct to win a 'race to the courthouse.'" Parallel Iron, 914 F. Supp. 2d at 127.

"Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004). As a policy matter, courts do not want to "deter settlement negotiations and encourage races to the courthouse, as potential plaintiffs must file before approaching defendants for

settlement negotiations, under pain of a declaratory suit." Id.; see also Davox Corp. v. Digital Systems Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993) ("Here, Davox should not be permitted to take advantage of the fact that DSI responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by Davox's responses to its letters.").

Moreover, "transfer may be appropriate where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation" and "[t]he first-filed suit is particularly suspect where a party . . . has brought a declaratory judgment action for non-infringement." Veryfine Products, Inc. v. Phlo Corp., 124 F. Supp.2d 16, 22 (D. Mass. 2000); cf. Biogen, 954 F. Supp. 391 (D. Mass. 1996) (allowing plaintiff's declaratory judgment action where it had a proper basis for bringing suit at the time it filed its complaint).

(2)     Analysis

The instant circumstances warrant applying an exception to the first-filed rule. Cutting Edge's cease-and-desist letter in March 2014 advised Sustainable of Cutting Edge's infringement claims and its interest in resolving the matter out-of-court. See Berman Decl. Ex. A. It also expressed its desire to act promptly by setting a ten-day deadline for Sustainable to respond in order to avert further action. Id. Sustainable stretched this period by waiting until the tenth day to request an extension of time until "sometime during the week of April 6" to look into the matter and by waiting until Friday, April 11, 2014—the last day of that week—to respond to Cutting Edge's claims and ask that Cutting Edge provide evidence of its alleged use. Id. Ex. B, D. At the same time, Sustainable represented that it would like to resolve the issue without litigation, i.e., that it would like to negotiate the issues out-of-court, and that it "intend[ed] to reciprocate" to Cutting Edge the same courtesy that Cutting Edge had shown it in extending the

ten-day deadline.  Id. Ex. D.

On April 15, 2014, Ms. Kahn replied to Sustainable's response, in which Ms. Kahn asked Mr. Berman what evidence Sustainable would find sufficiently compelling to substantiate Cutting Edge's position, asserted that the Amendment to Allege Use constituted evidence, and expressed Cutting Edge's desire to not engage in informal discovery.  Id.  Mr. Berman contends that he found Ms. Kahn's stance troubling, id. ¶ 11, but he did not advise her of this view.  Instead, Sustainable abruptly filed the instant action in this court, its preferred forum.  See id. ¶ 13.

In its opposition memorandum and at oral argument, Sustainable relies on Biogen to support its argument that Cutting Edge has not established special circumstances to except application of the first-filed rule.  Biogen involved a patent dispute between two pharmaceutical companies, Biogen, Inc. and Schering Aktiengesellschaft ("Schering AG").  954 F. Supp. at 392–94.  In December 1994, Schering AG retained the rights to a patent which, according to the company, allowed it to block Biogen from making its version of beta interferon for the treatment of multiple sclerosis.  Id. at 393.  Over the next 12-16 months, the dispute played out before the United Stated Food and Drug Administration (FDA) while the parties discussed cross-licensing of their respective products and shared access to clinical data.  Id. at 393–94.  On April 26, 1996, Schering AG's subsidiary, Berlex Laboratories, Inc., sued the FDA to enjoin approval of Biogen's product.  Id. at 394.  On May 3, 1996, Biogen filed an action for a declaratory judgment.  Id.

The present case differs markedly from Biogen.  First, unlike the circumstances in Biogen, Sustainable's representations that the parties would engage in a negotiation in an attempt to resolve the matter without litigation caused Cutting Edge to forego the filing of its lawsuit

7

pending the outcome of the negotiation. At no time prior to filing this action did Sustainable inform Cutting Edge that it had been troubled by Ms. Kahn's April 15, 2014 e-mail or that it saw litigation a likely outcome of the discussions. Instead, Sustainable allowed Cutting Edge to believe that they were engaged in an exchange of information that would resolve the matter to the parties' mutual satisfaction without litigation. Second, this case does not involve a long-running, public dispute akin to the circumstances in <u>Biogen</u>, during which the parties' rights vis-à-vis each other remained in a state of limbo. Rather, Cutting Edge responsibly deferred filing litigation before approaching Sustainable and gave Sustainable ten days to cease using the SLMG Mark and abandon its application to use the designation in order to avert further action by Cutting Edge, <u>see</u> Berman Decl. Ex. A, while Sustainable rushed to file its complaint a mere seven days after its first substantive response to Cutting Edge's letter, a response in which Sustainable represented its desire to resolve the matter without litigation, <u>id.</u> Ex. D.

In light of these facts, maintaining the instant action would cut against promoting settlement negotiations and avoiding races to the courthouse. Even when construing all the facts in the light most favorable to Sustainable, it would be inequitable to reward Sustainable by maintaining this action in its preferred forum. See <u>Davox Corp.</u>, 846 F. Supp. at 148–49; cf. <u>Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.</u>, 249 F. Supp. 2d 12, 16–17 (D. Mass. 2002) (maintaining declaratory judgment action where plaintiff "made no promise or implication that it would enter into negotiations with [the defendant]").[4]

---

[4] As noted above, Cutting Edge also challenges Sustainable's capacity to sue under Federal Rule of Civil Procedure 17(b) and Massachusetts law. <u>See</u> Mem. Reasons Supp. Def. Mot. Dismiss Compl., Altern. Transfer Venue 9-13. At oral argument, Sustainable's attorneys represented to the court that Cutting Edge notified them at the meet and confer required by District of Massachusetts Local Rule 7.1 that Cutting Edge was going to file the instant motion and that Sustainable was not registered to do business in Massachusetts. Because the court finds that maintenance of this action in Sustainable's preferred forum is inequitable and exercises its

8

IV.     Conclusion

For the foregoing reasons, Cutting Edge's Motion to Dismiss Complaint, or, in the Alternative, to Transfer Venue [#11] is ALLOWED.  This case is CLOSED.

IT IS SO ORDERED.

Date: September 15, 2014                                    /s/ Indira Talwani
                                                            United States District Judge

---

discretion under the Declaratory Judgment Act to dismiss the case, the court need not decide whether Sustainable's failure to register before filing this complaint should impact the first-filed rule.